UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARRYL W. RISER, | NO: 2:18-CV-0119-TOR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| WASHINGTON STATE UNIVERSITY, DON HOLBROOK, BRIAN ALLAN DIXON, and RANDI N. CROYLE, | |
| Defendants. | |

BEFORE THE COURT is Defendants Washington State University, Don Holbrook, Brian Dixon, and Randi Croyle's (Final) Motion for Summary Judgment (ECF No. 118). The Motion was submitted for consideration without a request for oral argument. Riser opposes the Motion. ECF No. 121. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, the Defendants' (Final) Motion for Summary Judgment (ECF No. 118) is **granted**.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

## STANDARD OF REVIEW

A movant is entitled to summary judgment if the movant demonstrates "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the "burden of establishing the nonexistence of a 'genuine issue.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

In deciding, the court may only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). As such, the nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings. *Liberty Lobby*, 477 U.S. at 248. At this stage, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* at 255. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. *Id*. at 252.

Per Rule 56(c), the parties must support assertions by: "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The court is not obligated "to scour the record in search of a genuine issue of triable fact[;]" rather, the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (brackets in original) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir. 1995)).

Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## BACKGROUND

Plaintiff Darryl Riser brought this instant action against Defendants Washington State University, Don Holbrook, Brian Dixon, Randi Croyle, Kirk Schulz, Holly Ashkannejhad, and Teddi Phares on April 5, 2018. ECF No. 1 at 1-2. The same day, Riser submitted an application to proceed *In Forma Pauperis*. ECF No. 2. On April 9, 2018, Riser was allowed to proceed in forma pauperis, at a

reduced fee not a complete waiver.[1]  ECF No. 9.  Given the partial filing fee, the

Court was obligated to screen Riser's Complaint to determine whether Riser's

allegations stated a plausible claim of relief.  The Court found Riser stated a

plausible claim for relief against Defendants WSU, Holbrook, Dixon, and Croyle

based on Riser's allegations that they retaliated against him for exposing alleged

racial discrimination in the financial aid department.  ECF No. 16 at 3.  The Court

determined Riser did not state a claim against Defendants Schulz, Ashkannejhad,

and Phares, finding, *inter alia*, that Washington Administrative Code § 504-04-020

and Wash. Rev. Code § 34.05.240 do not provide a basis for personal liability,

ECF No. 16 at 4.

Riser filed his First Amended Complaint on April 26, 2018.  The same day,

Riser submitted a Motion for Temporary Restraining Order (ECF No. 19) and a

Motion to Voluntarily Dismiss (ECF No. 20) Schulz, Ashkannejhad, and Phares

ECF No. 20.  The Court granted the Motion to Dismiss.  However, the Court

---

[1]  Although the Order (ECF No. 9) stated Riser's application to proceed *in forma pauperis* was denied, the application was technically approved by allowing for a reduced fee.  *See* ECF No. 60 at 9; *Olivares v. Marshall*, 59 F.3d 109, 111 (9th Cir. 1995) ("Courts have discretion to impose partial filing fees under the in forma pauperis statute.").

denied the Motion for Temporary Restraining Order because Riser did not demonstrate a likelihood of success, *inter alia*. ECF No. 23. The Court observed:

> Although Plaintiff was assigned whistleblower status, Plaintiff has not submitted any evidence supporting his assertion that he was wrongly terminated for his whistleblower activities, which appears to be limited to criticisms of supervisors and other employees. Rather, the evidence submitted so far appears to support WSU's decision to terminate Plaintiff for cause and that Plaintiff was accorded adequate notice and an opportunity to respond despite Plaintiff's status as an at-will employee, bearing in mind that "discharge of a public employee whose position is terminable at the will of the employer" generally does not implicate the due process clause because the employee has no property interest in the position. *Bishop v. Wood*, 426 U.S. 341, 348 (1976); *Clements v. Airport Auth. of Washoe Cty.*, 69 F.3d 321, 331 (9th Cir. 1995).

ECF No. 23 at 3-5 (citations omitted). Riser submitted a Motion for Reconsideration (ECF No. 25), which the Court denied (ECF No. 27).

On May 23, 2018, Riser submitted three Motions for (Partial) Summary Judgment (ECF Nos. 31; 32; 33). On June 27, 2018, Defendants cross-moved for summary judgment in their Replies (ECF Nos. 50; 51; 52). On July 16, the Court provided notice to Riser that Defendants cross-moved for summary judgment and gave Riser additional time to respond. ECF No. 64. Riser provided his Response. On October 12, 2018, the Court held in favor of Defendants on the cross-motions for summary judgment, finding: (1) WSU is not subject to suit under 42 U.S.C. § 1983; (2) under Eleventh Amendment immunity, the individual Defendants cannot be liable for damages in their official capacity; (3) Holbrook did not owe a

fiduciary duty to Riser; (4) Holbrook did not commit fraud; (5) Riser's claims of

Intentional Infliction of Emotional Distress against Holbrook and Croyle fail as a

matter of law; and (6) Riser's claim of defamation against Holbrook and Croyle

fails. ECF No. 86.

Meanwhile, on June 6, 2018, Riser submitted a Motion to Recuse (ECF No.

43), asserting that the presiding judge is biased for a litany of reasons. The Court

addressed Riser's complaints, found they "stem from patent misunderstandings and

the Court's objective assessment of Plaintiff's motions", and denied the Motion.

ECF No. 60 at 6-15. Riser submitted another Motion to Recuse (ECF No. 69) on

July 25, 2018. On August 9, 2018, the Court denied the Motion, noting that

Riser's "requests are premised on unfounded claims of bias and retaliation . . . ."

ECF No. 76 at 8-9.[2]

---

[2]    Riser continues to assert that the presiding judge is biased and has

committed a litany of perceived errors. *See* ECF No. 121-1. In his most recent

affidavit, Riser asserts the Court violated his constitutional rights and committed

fraud and "reserve[s] the right to seek damages against the presiding judge for

ongoing retaliation, for misconduct, and to pursue impeachment." ECF No. 121-1

at 2, ¶. The Court has responded to Riser's many, baseless complaints, yet Riser

1    On August 17, 2018, Riser submitted his Second Amended Complaint (ECF

2    No. 77) and submitted another Motion for Preliminary Injunction (ECF No. 78).

3    On October 15, 2018, the Court, again, found Riser did not establish a likelihood

4    of success on the merits and denied the Motion, noting that the grant of

5    Washington State unemployment benefits does not demonstrate he was unlawfully

6    terminated.  ECF No. 87 at 3-4.

7    On December 11, 2018, Riser submitted his Third Amended Complaint.

8    ECF No. 94.  Defendants requested the Court strike certain claims that were

9    previously dismissed on summary judgment.  ECF No. 105.  The Court granted the

10   request, striking the offending claims (claims 15, 16, 22, 26, and 29).   ECF No.

11   115 at 4-6.

12   Defendants now move for summary judgment on the remaining claims.

13   ECF No. 118.

14   //

15   //

16   //

17   //

18

19   _____

continues to assert them.  *See*, e.g.*,* ECF No. 121 at 5, ¶ 2 (complaining about a

20   local rule applied in *admiralty* cases, but not this case).

# FACTS[3]

Upon review of the evidence – construing all genuine disputes (supported by evidence) in favor of Riser as the non-moving party – the Court finds the evidence demonstrates the following.

In January 2017, Plaintiff was hired as the Training Coordinator at the WSU Student Financial Services Department. ECF No. 94-1 at 2, ¶ 7. Early on, Riser began raising relatively mundane workplace complaints and, in April of 2017, he filed a complaint (Case Number 2017-193) with the WSU Office of Equal Opportunity ("OEO"). *See* ECF No. 18-1 at 16-22 (complaints about temperature of the office; colleagues watching videos and listening to music, coughing, sneezing, passing gas, and using air fresheners; his computer shutting down because of an overloaded circuit; complaints that Gloria Barker said "you punk" and "get off my chair", would hit him and say "wake-up", and complained that he talked too long, etc.); at 24-27 ("Follow-up Complaint" with similar concerns).

---

[3] The following facts are not in dispute, as the facts are predominately drawn from exhibits submitted by Plaintiff. Notably, the Court has made an extensive effort to comb through the evidence submitted with Riser's previous Complaints, Motions, Supplements, and Replies/Responses—even though the Court need not do so. *Keenan v. Allan*, 91 F.3d at 1279.

In an affidavit, Riser asserted that he reported incidents of unlawful harassment and unlawful discrimination under Title VII of the Civil Rights Act *in April of 2017*. ECF No. 18-1 at 4, ¶ 8. However, the attachments he cites to do not support this contention. *See* ECF No. 18-1 at 16-34. Indeed, after an initial review of Plaintiff's complaint, the OEO closed the file because Plaintiff "did not have reason to believe conduct was discriminatory" and that his complaints did not implicate "Executive Policy 15" (the policy prohibiting "Discrimination, Sexual Harassment, and Sexual Misconduct"). ECF No. 18-1 at 29-32.

On September 19, 2017, Riser submitted a SWOT (Strength, Weakness, Opportunities, and Threats) Analysis (ECF No. 18-27) to Brian Dixon, Vice President of Student Financial Services, after Dixon "called an emergency meeting to solicit ideas to address the high turnover and the Department's ineffectiveness." ECF No. 18-1 at 4-5, ¶ 10. In the "Weaknesses" section of the SWOT Analysis, Riser identifies office culture based on managers' conduct as a weakness that negatively impacts the office operation, complaining of (1) perceived inequal treatment of "privileged" and "non-privileged" employees concerning mundane workplace issues (noises; smells; peer review of e-mails); (2) perceived lack of support of employee rights (right to work poster placement, allowing cooking at workstations, and taking no action "on extremely distracting sounds and smells"); (3) inappropriate conversations with students ("about getting drunk and other

inappropriate dialogue" and profanity); (4) inconsistent protocol (cooking

appliances); (5) lack of respect and consideration for employees (not courteous—

not saying please, thank you, etc.; allowing students to manage and train

employees and assign work to Riser); and (6) bullying ("[s]ystematically excluding

and isolating" Riser; colleagues refusing to meet timelines; managers yelling at

Riser to get his attention).  ECF No. 18-27 at 4-8.

According to Riser, "immediately, [he] felt the work environment transition

from good to bad for [him], which [he] reported to [the WSU] Human Resource

Services ("HRS") and [OEO]."  ECF No. 18-1 at 5, ¶ 11.  In support, Riser only

cites to "Attachment E": the "Proposal to Restructure the SFS Department" dated

October 19, 2017 (which includes an *overview* of the SWOT analysis).  ECF No.

17-1 at 44-45.  ECF No. 18-1 at 36-53.

Apparently, Myla Walter, Assistant Director of Operations, and Dixon had a

meeting with Riser on September 28, 2017 to discuss his SWOT Analysis.  *See*

ECF No. 18-28 at 2.  In a letter to Riser, Walter (1) thanked Riser for meeting with

her and Dixon and (2) summarized some of the items they discussed in the

meeting, including the need to "openly and accurately communicate when conflict

or office violations may occur and regularly communicate when challenges arise

while providing others with the benefit of the doubt" and to be "considerate of

[his] fellow team members through open communication channels, limiting assumptions, and mindful interpretations." ECF No. 18-28 at 2.

On October 4, 2017, Riser sent an e-mail to Walter responding to the above letter. ECF No. 18-29. Riser states: "After receiving your <u>erroneous</u> Report, I felt compelled to respond; to address the errors, omissions, comments, and to express my disagreement with your justifications[,]" stating that he felt the "discussion" was more of an "interrogation". ECF No. 18-29 at 2 (emphasis in original). He writes: "I disagree with most of your Report", complaining that (1) he felt "blind-sided" because he was not prepared to discuss the SWOT Analysis, (2) not all issues were addressed, (3) he felt his observations were invalidated and discredited, and (4) past complaints had been negligently handled, *inter alia*. ECF No. 18-29 at 2-4. Riser then directs his attention to kitchen appliances: "I believe special consideration should be given to **<u>prohibit ALL kitchen appliances</u>**." ECF No. 18-29 at 4 (emphasis in original). Riser complains about being prohibited from using his rice cooker to warm his food even though a colleague continued to use a coffee maker in his workstation after Riser complained about the "<u>offensive</u> smell of coffee (non-gourmet coffee)." ECF No. 18-29 at 5 (emphasis in original). Riser concludes by asking whether the rice cooker ban was a result of retaliation, whether it was the logical choice to implement such a ban, what the policy is for boiling water for tea with a rice cooker in the workstation, and whether coffee

makers and refrigerators were "permitted because certain privileged individuals possess these appliances?" ECF No. 18-29 at 5.

On October 19, 2017, Riser submitted an eighteen-page "Proposal to Restructure the Student Financial Services Department" to Eric Godfrey (Executive Director), Kirk Schulz (WSU President), Daniel Bernardo (Provost and Executive Vice President) and Mary Gonzales (Vice President for Student Affair and Dean of Students. ECF No. 119 at 2-3, ¶ 6.

Riser continued to raise workplace issues to the OEO and others throughout October and November of 2017. *See* ECF Nos. 18-31 at 5-6 ("Workplace Concern Resolution Form" dated October 27, 2017 raising issue of rice cooker); 18-1 at 55 ("Whistleblower Complaint" sent via e-mail to Schulz and Heather Lopez on November 1, 2017); 18-31 at 7-8 ("Workplace Bullying Incident Report" dated November 16, 2017 complaining about being treated "like a work-study student", "unreasonable timelines" and expectations "without providing adequate training and instructions", and employees not being polite or cordial."); 18-1 at 59 (Agreement to Mediate signed on November 20, 2017); 18-4 (Ethics Board e-mail dated November 27, 2017 to Riser regarding alleged violations of the Washington Ethics in Public Service Act).

Notably, Riser submitted to the Court an OEO document dated November 8, 2017, reflecting the OEO's decision to close claim number 2017-412 because Riser

did not provide investigators with any information that would implicate EP 15, despite his claim of gender discrimination. ECF No. 18-1 at 57. However, Riser has not provided the Court with the underlying complaint.

Riser asserts that, on November 8, 2017, he "filed a RACE and GENDER Discrimination Charge" with the Washington State Human Rights Commission ("WSHRC") ECF No. 94 at 2. However, Riser has not provided the actual complaint. Rather, the only documents in the record related to the WSHRC appears to be limited to (1) a Notice of Charge of Discrimination (without any information regarding the factual basis thereof) dated November 30, 2017, ECF No. 18-32 at 2, and (2) documents demonstrating that a complaint (filed on March 17, 2018) was withdrawn on June 21, 2018 pursuant to Riser's request (WSHRC Case No. 38ERSZ-0335-17-8; EEOC Case No. 38G-2018-00083), ECF No. 77-3 at 1-3.

According to Plaintiff, around December 13, 2017, Randi Croyle, Riser's direct supervisor, searched Riser's "personal property" ("i.e. desktop, desk drawers, filing cabinet, and files") without Plaintiff's consent and without explaining the purpose of the search other than saying "she was looking for something." ECF No. 18-1 at 6-7, ¶ 18. Plaintiff asserts the search was conducted "without probable cause, without a warrant, and without [his] expressed consent"

and was conducted "in retaliation for engaging in 'protected activities'." ECF Nos. 82 at 8, ¶ 46; 94-1 at 4, ¶ 18.

On December 13, 2017, Croyle issued Riser a "notice of counseling". ECF No. 82 at 4, ¶ 17. In the Notice of Counseling (a portion available at ECF No. 18-30), Croyle writes that the purpose of the Notice is to "address deficiencies in your work performance and behavior." ECF No. 18-30 at 2. In the Notice, Croyle (1) informed Riser that he was "exhibiting trends of missing deadlines, disregarding your supervisor's instruction, providing inaccurate information to students, and interacting unprofessionally" and (2) identified instances of missed deadlines and providing wrong information to students. ECF No. 18-30 at 2-3. Croyle wrote that "[i]mprovements in these areas of performance must be corrected" and stated that he hopes Riser understands the seriousness of his actions and takes steps to improve. ECF No. 18-30 at 3.

On December 14, 2017, Riser replied to Croyle via e-mail, stating that "[i]t is very obvious" that Croyle issued the Notice out of retaliation for Riser submitting the SWOT Analysis (September 19, 2017), a dispute resolution complaint, a discrimination complaint against Croyle (November 8, 2017), and a bullying Complaint against Croyle (November 16, 2017). ECF No. 18-31 at 2. Riser declares the Notice "is null and void, invalid, and unwarranted; especially in lieu of the corruption and major deficiencies that I have reported directly to you

and directly about your inappropriate conduct." Riser then states: "Your fraudulent accusations are almost criminal. For the record, I empathically oppose and object to your fraudulent - vague - exaggerated accusations (Notice of Counseling) in its entirety." ECF No. 18-31 at 2.

On January 5, 2018, Riser sent an e-mail to Croyle (1) chastising Croyle for hiring what Riser labeled as an "unacceptable candidate" (whom Riser accused of exhibiting racist behavior, without identifying the behavior) and (2) accusing Croyle of making the hire out of retaliation against Riser. ECF No. 18-22 at 7. In the e-mail, Riser "simultaneously" demanded Croyle's resignation. ECF No. 18-22 at 7. The same day, Riser wrote another e-mail to Croyle demanding his immediate resignation:

> Pursuant to your unconditional consent for me to take legal action against you for retaliatory action against me, [in lieu of legal action] this is a **DEMAND FOR YOUR RESIGNATION** (immediately).

> Your immediate resignation is demanded for continuously disrespecting my rights and retaliatory action against me. Not only is your resignation demanded based on your retaliatory action against me, but based on your: (1) employee misconduct, (2) gross mismanagement, (3) filing erroneous/fraudulent federal reports, and (4) violation of WSU Business Policies.

> One example of a recent retaliatory action and gross mismanagement is rewarding a job offer (promotion) to a current employee with a history of inappropriate conduct to supervise me; neglecting to consider staff input (opposition) or the search committee's recommendations.

ECF No. 18-26 at 13 (brackets and emphasis in original). Riser then identifies alleged violations regarding Croyle bringing her newborn to the SFS office and concludes that "this is only one detailed example of your inappropriate conduct that justifies your immediate resignation[.]" ECF No. 18-26 at 13-14. Notably, Riser does not mention any issues regarding alleged unlawful discrimination, despite his claim that he previously filed race and gender discrimination complaints against Croyle. *See* ECF Nos. 18-1 at 57; 94 at 2.

On January 5, 2018 (the day Riser sent the response to Croyle), while Riser was on sick leave, Don Holbrook, Executive Director, issued a "Home Assignment Notice" to Riser, which was hand-delivered by two armed police officers to Riser's residence. ECF No. 82-1 at 4, ¶ 20; at 7, ¶ 50. In the Notice, Holbrook informed Riser that he is being "assigned to work from home until further notice" and that, while he will have access to his WSU email account, his systems access has been removed and he is not to respond to any work-related emails unless it is a request from Holbrook. ECF No. 18-2 at 2. According to Riser, the Home Assignment "prohibited [him] from completing [his] Training Coordinator Duties" and he was not given any work during the Assignment. ECF No. 82-1 at 7, ¶ 43. Riser also complains that he was denied "reimbursement" for expenses incurred during the Assignment. ECF No. 82-1 at 7, ¶ 46.

On January 12, 2018, Riser sent a demand for resignation to Holbrook and Dixon, and a second demand for resignation to Croyle (ECF No. 18-26 at 8-12). In the second demand for Croyle's resignation, Riser asserts that Croyle (1) violated the whistleblower protection act, the ethics in public service act, and WSU policy by issuing – and sending two armed WSU police officers to deliver – the Home Assignment and (2) violated the FMLA by issuing the Notice while on sick leave (Riser has not demonstrated he was taking *FMLA* leave). ECF No. 18-26 at 8-12.

On January 30, 2018, Holbrook issued a "notice of charges" (ECF No. 19-6) to Riser. In the letter, Holbrook notifies Riser that he is considering terminating Riser for cause for gross misconduct, including "acts of insubordination, inappropriate communication, failure to follow directives, deficiencies in quality of work, and providing misinformation to students." ECF No. 18-5. Holbrook identifies, *inter alia*, Riser's "extremely hostile and unprofessional" response to Croyle's notice of counseling and Riser's "inappropriate" and "hostile" demand for resignation to Croyle and Dixon. ECF No. 18-5 at 2-5. Holbrook wrote: "[t]hese messages also reflect a pattern of unprofessional communication, create a threatening atmosphere, and show a complete disregard for the authority of supervising employees." ECF No. 18-5 at 5.

On February 12, 2018, Riser sent Kirk Schulz, President of WSU, a series of "Petitions for a Declaratory Order" to terminate Croyle, Holbrook, and Brian; to

"dismiss" the Notice of Charges, and "rescind" the complained-of job offer and the home assignment, among other requests. ECF Nos. 18-20, -21,-22, -23, -24, -25, -26. In the Petitions, Riser requests a formal hearing, in the alternative.

On March 8, 2018, Don Holbrook terminated Riser's employment. ECF No. 19-13. The same day, Riser sent an appeal of the termination to Daniel Bernardo, Provost and Executive Vice President. ECF No. 18-10 at 2-11. In a document dated the same day, the OEO concluded their investigation and closed the matter, finding "there was no information presented to investigators that [the complained-of] incidents were related to discrimination, discriminatory harassment, bullying or nondiscriminatory harassment, or retaliation." ECF No. 19-9 at 4.

On March 21, 2018, Riser sent his "appeal" (ECF No. 19-10 at 3-10) to the OEO Final Closing Document to Schulz. ECF No. 19-10 at 3-10. In the "appeal", Riser writes: "I believe the OEO Final Closing Document is defective, fraudulent, and bias [sic] against me. Accordingly, this is also my formal request for a **Formal Hearing**; pursuant to my CONSTITUTIONAL RIGHT." ECF No. 19-10 at 3 (emphasis in original).

On April 4, 2018, Bernardo denied Riser's appeal of his termination for cause, stating that Riser "did not take responsibility for, or attempt to explain [his] insubordination and unprofessional communication" and that Riser's "unprofessional behavior towards supervisors and colleagues severely [affected]

Student Financial Services' ability to function, disrupted the workflow and efficiency of other employee, and significantly damaged morale." ECF No. 19-15 at 2-3.

On April 12, 2018, the OEO Appeals Committee denied Riser's appeal of the OEO final decision. ECF No. 19-11 at 2. On April 13, 2018, Riser wrote to Schulz complaining about the OEO decision because the process was not impartial or fair and did not involve a formal hearing. ECF No. 19-12 at 2. Riser continued to request a formal hearing, to no avail. ECF No. 19-12 at 2.

## DISCUSSION

Defendants move for summary judgment on all of Riser's remaining claims. Riser opposes the Motion. However, Riser's Response does not address the arguments posed by Defendants.[4] *See* ECF No. 121. This, by itself, is sufficient reason for the Court could grant summary judgment in favor of Defendants, as it is Riser's burden to demonstrate that a genuine issue of fact precludes a finding of summary judgment. However, as noted above, the Court culled the information from Riser's past submissions, but even after reviewing such, the Court finds that

---

[4] Riser asserts that Defendants "misrepresented [the] facts [that] support the basis for all of my Claims." ECF No. 121-1 at 1, ¶ 5 (emphasis in original). Such blanket statements do not create a genuine issue.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

Riser has not presented evidence to support his claims or his claims otherwise fail. As such, Defendants have demonstrated that they are entitled to entry of judgment in their favor.

A. **Summary of Undisputed Facts**

As the facts above demonstrate, Riser began raising minor work-place complaints early in 2017 and thereafter—Riser has not submitted any evidence connecting the complaints to unlawful discrimination. Riser delivered his SWOT Analysis to Dixon in September of 2017 critiquing his supervisors—again, none of the complaints have anything to do with unlawful discrimination. Riser continued to raise minor work-place complaints, *see*, *e.g.*, ECF No. 18-29 at 5 (complaining about rice cooker), and began conversing with certain employees via e-mail in an unprofessional manner, *see*, *e.g.*, ECF No. 18-29 at 2 (Riser's response to Walter's summary of their meeting discussing the *SWOT* Analysis). Riser also began asserting he was being discriminated against based on race and gender, but he never presented any evidence of such to the Court and the numerous investigations similarly found that Riser did not present evidence of unlawful discrimination, retaliation, or harassment/bullying.

In December, Croyle issued Riser a notice of counseling to address deficiencies in his work, his disregard for supervisor's instructions, and acting unprofessionally. ECF No. 18-30 at 2-3. Instead of heeding Croyle's warning that

Riser needed improvement in these areas, ECF No. 18-30 at 3, Riser escalated things—accusing Croyle of retaliating against him, declaring the Notice "null and void, invalid and unwarranted", and asserting that Croyle's "fraudulent accusations are almost criminal". ECF No. 18-31 at 2.

Riser did not relent. Riser sent Croyle an e-mail on January 5, 2018 accusing Croyle of hiring an "unacceptable candidate" out of retaliation and demanded Croyle's resignation (twice in the same day via e-mail). ECF Nos. 18-22 at 7; 18-26 at 13. Notably, Riser identified Croyle bringing her newborn to the SFS and the amount of time spent in meetings as an example of "inappropriate conduct that justifies [her] immediate resignation[,]" but never mentions unlawful discrimination. ECF No. 18-26 at 13-14. That day, Holbrook assigned Riser to work from home.

Riser again escalated things, sending a demand for resignation to Holbrook, Dixon, and Croyle, along with a series of requests for declaratory orders to Schulz. He did not relent. Rather, Riser continued to make outrageous demands of his superiors while failing to provide substantive responses to his charges of unprofessionalism or his substandard work performance. Indeed, out of the numerous e-mails and related documents, Riser does not provide one example of race or gender discrimination—rather, he conclusory asserts that every-day work-place decisions were made because of his race and gender.

Riser was ultimately terminated for cause for the problems identified in his notice of charges; his numerous appeals were denied.

B. **Claims affected by previous decisions**

The Court has previously determined: (1) WSU is not subject to suit under 42 U.S.C. § 1983, ECF No. 86 at 5-7; (2) Holbrook did not owe a fiduciary duty to Riser, ECF No. 86 at 8-9; (3) the Home Assignment Notice was not fraudulent, ECF No. 86 at 10-11; (4) Riser's Intentional Infliction of Emotional Distress (tort of outrage) claim fails as a matter of law, ECF No. 86 at 11-14; (5) Riser's claims of defamation against Holbrook and Croyle failed, ECF No. 86 at 14; (6) the individual Defendants enjoy Eleventh Amendment immunity in their official capacity, ECF No. 86 at 7-8; and (7) WAC 504-04-020 and RCW § 34.05.240 do not provide a basis for personal liability, ECF No. 16 at 4.

The Court finds that the reasoning supporting these determinations equally apply to the remaining Defendants. As such, claims 26 (IIED claim against Holbrook, Dixon, and Croyle), 27 (claim based on WAC 504-04-020), 28 (claim based on RCW § 34.05.240), 30-33 (same), 39 (Breach of Fiduciary Duty against Holbrook), 40 (Breach of Fiduciary Duty against Holbrook, Dixon, and Croyle), and 45 (Fraud) must be dismissed.

C. **Conspiracy**

Riser asserts a broad conspiracy by numerous employees of WSU to violate his rights. However, Riser has not produced even a modicum of support for such claims—Riser has not submitted any evidence of a conspiracy between the actors, let alone any evidence of a conspiracy to deprive Riser of the equal protection of the law. "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss[,]" *Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982), let alone a motion for summary judgment. *United Steelworkers v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (plaintiff must demonstrate the existence of "an agreement or meeting of the minds" to violate the plaintiffs' civil rights").

Accordingly, without any evidence of a conspiracy, claims 34[5], 46[6], 47, and 48-58 are dismissed.[7]

_____

[5]     Claim 34 also includes claims of retaliation and violation of due process.

[6]     Claim 46 includes claims of conspiracy and retaliation. ECF No. 94 at 33.

[7]     Notably, Riser sometimes uses the word "conspired" in reference to an *individual* actor's (alleged) choice to retaliate, but a claim for conspiracy requires two or more individuals to agree to act toward a certain end. *See*, *e.g.*, ECF No. 94

D. **<u>Search</u>**

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." As the Supreme Court has held, "[i]t is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 755 (2010). Indeed, "'[t]he Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government,' without regard to whether the government actor is investigating crime or performing another function[,]" including when "the Government acts in its capacity as an employer." *Id.* at 755-56 (quoting *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 613–614 (1989)). Importantly, however, as the plain language of the Amendment indicates, the Fourth Amendment only protects against the search and seizure of *their* persons, houses, papers, and effects. In other words, there is no Fourth Amendment violation when there has been no search of private property. *See Altman v. City of High Point, N.C.*, 330 F.3d 194,

---

at 16 (claim 13: "Holbrook conspired a 'pretextual Home Assignment Notice' to retaliate").

201 (4th Cir. 2003) ("'effects' referred only to personal property, and particularly to goods or moveables")

In Claim 10, Plaintiff alleges that Croyle conducted an unlawful search of his workstation in violation of the Fourth Amendment. ECF No. 94 at 14. Riser elsewhere asserts that Croyle searched his "desktop, desk drawers, filing cabinet, and files", ECF No. 121-2 at 8, "without probable cause, without a warrant, and without [his] expressed consent" and out of "retaliation for engaging in 'protected activities'." ECF Nos. 82 at 8, ¶ 46; 94-1 at 4, ¶ 18. Importantly, however, Riser only references University property, but does not allege *his personal property* was searched. If he had personal papers or effects that were searched, his Fourth Amendment rights (as incorporated by the Fifteenth Amendment) may very well be implicated. However, given Riser has not presented any evidence (or even alleged) that his personal belongings were subjected to the search, Riser's claim must be dismissed.

E. **Discrimination; Retaliation**

Upon review of the facts, the Court finds that Riser has not brought forward any evidence that he was subjected to (1) discrimination based on any protected status or (2) retaliation based on any protected activity.

1. **Race/Gender Discrimination**

Riser asserts that Defendants discriminated against him based on his race

and gender in violation of Title VII of the Civil Rights Act. *See* ECF No. 94 at 5.

However, Riser has not produced any evidence suggesting he was treated

differently based on his race or gender. *See* ECF No. 94 at 6. Rather, Riser relies

on bare, conclusory allegations of racial and gender animus, such as his contention

that he was not allowed to use a rice cooker in his workstation "based on RACE

and GENDER", ECF No. 94 at 8 (emphasis in original). Notably, despite Riser's

allegations that he was subject to frequent "racist" comments and that Croyle used

"slave language", ECF No. 94 at 5-6, Riser has not submitted any evidence of

racial discrimination and he repeatedly raised trivial complaints (such as the issue

with the rice cooker) to superiors without any mention of unlawful discrimination

(a decidedly non-trivial matter). *See* ECF No. 18-26 at 13-1 (January 5, 2017 letter

from Riser to Croyle complaining about Croyle bringing her newborn to work).

     The Court finds it telling that Riser initiated several investigations into his

allegations of racial and gender discrimination, but those investigations did not

find any evidence of such. *See* ECF No. 19-9 (WSU OEO final closing document

finding Plaintiff's claims of discrimination and retaliation were unfounded).

     Without the production of any evidence of unlawful discrimination, claims 1

and 3 are dismissed.

//

//

2. **Retaliation**

Riser asserts that Defendants retaliated against him for him reporting complaints about alleged bullying, ethics violations, and unlawful discrimination, in violation of his First Amendment right to speech and anti-retaliation provisions under Title VII of the Civil Rights Act. *See* ECF No. 94 at 9. However, again, Riser has not brought forward any evidence of such. While Riser did submit numerous complaints to the OEO and, ultimately to the WSHRC and the EEOC, there is no evidence that Defendants took any action based on such. Importantly, while there is some temporal proximity between certain employment actions and Riser's unproven and unevidenced complaints of unlawful discrimination and ethics violations: (1) Riser had been raising the same (or similar) complaints for months and simply recast the complaints (without proof) as being tied to his race and gender, and (2) Defendants' actions were completely reasonable, if not light-handed, in consideration of Riser's own conduct.

Further, most, if not all, of Riser's speech is not protected by the First Amendment because Riser's complaints raised during his employ were limited to "individual personnel disputes and grievances" that would be of "no relevance to the public's evaluation of the performance of governmental agencies" is generally not of "public concern." *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)(quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)).

1       Ultimately, as the Court has observed on materially the same record, the

2   evidence adduced demonstrates Riser was terminated for good cause in response to

3   his hostile approach in communicating with his superiors.  Defendants provided

4   Riser with an opportunity to correct his deficient performance and unprofessional

5   conduct, but Riser only escalated his inappropriate behavior to his superiors.

6       As such – absent any evidence of retaliation – claims 4, 5, 6, 9, 12, 13, 14,

7   17, 18, 19, 20, 21, 23, 24, 25, 34, 36, 37, 38, 41, 42, 43, 44, 46 are dismissed.[8]  *See*

8   *Menefield v. Stradley*, 996 F.2d 1226 (9th Cir. 1993) ("Bare allegations of

9   retaliation will not suffice, by themselves, to sustain a claim of unlawful

10  retaliation.").

11  F.  **Due Process**

12      The Fourteenth Amendment of the United States Constitution provides that

13  "[n]o state . . . shall deprive any person of life, liberty, or property, without due

14  process of law . . . ."  The Supreme Court has recognized that "[a] property interest

15  in employment can, of course, be created by ordinance, or by an implied contract."

16

---

17  [8]      Claim 13 mentions "due process", but the claim is based on retaliation.

18  Claims 17, 21 and 38 include retaliation and a due process claims.  Claim 34

19  implicates an alleged conspiracy and due process.  Claim 46 includes a claim of

20  conspiracy and retaliation.

*Bishop v. Wood*, 426 U.S. 344, 350 (1976). "[T]he sufficiency of the claim of

entitlement must be decided by reference to state law." *Id.*

In Washington, "[a] public employee has a property interest in his

employment if he has a legitimate claim of continued entitlement to the job."

*Buesing v. City of Sumner*, 133 Wash. App. 1033 (2006).

> A property interest in employment typically arises from contractual or
> statutory limitations on the employer's ability to terminate an employee.
> A property interest in employment can also be created by implied contract,
> arising out of customs, practices, and de facto policies. When such
> a property interest exists, the employee is entitled to a hearing or some
> related form of due process before being deprived of the interest.

*Hudson v. City of Wenatchee*, 94 Wash. App. 990, 997 (1999) (citation omitted).

When determining the rights of the employee, the general rule is that "an

employment contract, indefinite as to duration, is terminable at will by either the

employee or employer." *Thompson v. St. Regis Paper Co.*, 102 Wash. 2d 219, 223

(1984) (citation omitted). "However, such a contract is terminable by the

employer *only for cause* if (1) there is an implied agreement to that effect or (2) the

employee gives consideration in addition to the contemplated service." *Id.* For

example, an "employer can contractually obligate themselves concerning

provisions found in an employee policy manual and thereby contractually modify

the terminable at will relationship." *Id.* at 228-29.

It is undisputed that Riser was an at-will employee because he was not

promised a definite duration of employment.  At most, WSU had to comply with the employment policy manual, but Riser was not entitled to more.  Upon review of the undisputed evidence, the Court finds Defendants complied with the manual. Riser's due process claim thus fails.

The policy manual distinguishes between corrective and disciplinary actions—the latter of which may be appealed by the employee to a specified employee of WSU, but not the former.  ECF No. 18-33 at 25-27.  A "Disciplinary Action" includes "suspension without pay, demotion, disciplinary reassignment, or reduction in salary,]" while a "Corrective Action" includes "informal verbal counseling, a verbal reprimand, training or retraining, a written counseling memo, a performance improvement plan, or a letter of reprimand."  ECF No. 18-33 at 25. The only "disciplinary action" Riser points to is his actual termination, as the work from home assignment was not a "reassignment" and Riser was not suspended or demoted, and his pay was not reduced.

Defendants complied with the manual by providing Riser with a "notice of charges" (ECF No. 18-5 at 2) before he was terminated and by providing Riser an opportunity to file an appeal (which Plaintiff exercised and to which Defendants provided multiple responses).  *See* ECF Nos. 18-37; 18-38.  The handbook does not give Riser the right to have a formal hearing or present oral argument.  Neither does the handbook give Plaintiff the right to choose who reviews Plaintiff's appeal.

WSU thus complied with the terms of the policy manual. As such, claims 7, 11, 17, 21, 34, 35, and 38 must be dismissed.

G. **Remaining Claims**

Riser's remaining claims do not present a viable cause of action and are dismissed. *See* ECF No. 94 at 6-7 (claim 2: complaining that Maja Gillespie disclosed Title VII information); at 12-13 (claim 8: claiming Eric Godfrey and Dan Bernardo disclosed Plaintiff's identity and ethics violations report).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for (Final) Summary Judgment (ECF No. 118) is **GRANTED**.

2. The pending Motions (ECF Nos. 129; 131) are **DENIED AS MOOT**.

3. All remaining hearings and trial are **VACATED**

The District Court Executive is directed to enter this Order, enter judgment for Defendants, provide copies to the parties, and close the file.

DATED August 29, 2019.



THOMAS O. RICE
Chief United States District Judge